UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
MICHAEL BAKON

                Plaintiff,

                                                      MEMORANDUM AND ORDER
                                                      16-CV-6137

   - against –

RUSHMORE SERVICE CENTER, LLC

                Defendant.

-----------------------------------------------------x
GLASSER, Senior United States District Judge:

       Plaintiff Michael Bakon ("Bakon" or "Plaintiff") brings claims against defendant Rushmore Service Center, LLC ("Rushmore" or "Defendant") for violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692e. Before the Court is Rushmore's motion to enforce an arbitration agreement between Plaintiff and a third party, First Premier Bank ("Premier"), which issued a credit card to Plaintiff in October 2014. For the reasons indicated below, the motion is GRANTED and this case is stayed pending the outcome of arbitration.

## **BACKGROUND**

       Plaintiff Bakon opened a credit card account (the "Account") with Premier on October 23, 2014 via a telephone call. ECF 19-1, Gilson Declaration ("Gilson Dec."), at ¶ 6.[1] Following the call, Premier directed its vendor to send the new credit card to Bakon, and in accordance with

---

[1] Defendant Rushmore initially submitted the declaration of Julie K. Gilson, an employee of Premier, in support of its motion. ECF 10-2. Rushmore submitted a supplemental declaration by Gilson with its Reply papers, which provided additional, relevant information. ECF 19-1. The supplemental declaration was timely filed in accordance with the briefing schedule endorsed by the Court, and is appropriately considered by the Court on this motion.

1

its general custom, to include in the mailing a copy of Premier's terms and conditions which would govern the Account (the "Agreement"). Id. at ¶ 7. Bakon claims that he never received the Agreement, but does not dispute that he received his credit card. ECF 14-1, Bakon Affidavit, at ¶ 3.

The Agreement contains a section clearly labeled with the heading "ARBITRATION AND LITIGATION." ECF 19-1 at pp. 7-9. It states that the "[a]ny claim arising out of or relating to this Contract, or the breach of this Contract or your Credit Account, shall be resolved and settled exclusively and finally by binding arbitration, in accordance with this provision." Id. p. 7. The Agreement states that it is intended to apply to "employees, parents, subsidiaries, affiliates, beneficiaries, agents and assigns of you and us." Id. It also prohibits class arbitration. Id.

Bakon used his credit card at least once during the subsequent two months. Rushmore submits account statements for the Account from that time period, which indicate that he incurred two charges: the first on October 28, 2014 was for $175 and represented the account's annual fee, and the second on December 25, 2014 was for $270.25 spent at Goldbergs Supermarket Brooklyn. Id. at pp. 10-21.

At some unspecified time thereafter, Bakon failed to make payments, and Premier "authorized and retained" Rushmore to collect on the Account. Gilson Dec. at ¶ 5. In a letter to Bakon dated May 18, 2016, Rushmore sought to collect $924.21 in outstanding debt on the Account. ECF 1-2. Bakon filed a complaint in this Court, on behalf of himself and others similarly situated, alleging that the letter violated his rights under the FDCPA because it used false representation or deceptive means to collect a debt and misrepresented the amount of debt

Plaintiff owed. ECF 1, Complaint, at ¶ 68. On February 8, 2017, Rushmore moved this court to compel arbitration of Bakon's claims on an individual basis and to stay this case. ECF 10.

**DISCUSSION**

It is well-established that federal public policy strongly favors arbitration. See e.g. Holick v. Cellular Sales of N.Y., LLC, 802 F.3d 391, 395 (2d Cir. 2015). To that end, the Federal Arbitration Act ("FAA") requires a federal court to enforce an arbitration agreement and to stay litigation that contravenes it. 9 U.S.C. § 2. The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." Genesco, Inc. v. T. Kakiuchi & Co., 815 F.2d 840, 844 (2d Cir. 1987) (citations and quotations omitted).

To determine whether arbitration should be compelled, the court must determine (1) whether the parties agreed to arbitrate; (2) whether the asserted claims fall within the scope of the arbitration agreement; (3) if federal statutory claims are at issue, whether Congress intended such claims to be non-arbitrable; and (4) if only some of the claims are arbitrable, whether to stay the balance of the proceedings pending arbitration. Id.; see also Bynum v. Maplebear Inc., 15-CV-6263, 2016 WL 5373643 at *5 (E.D.N.Y. Sep. 19, 2016).

Plaintiff's arguments center on the first factor of this inquiry—whether the parties agreed to arbitrate. Arbitration is a matter of contract, and as with all contracts, an arbitration agreement is not enforceable if "grounds exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Therefore, "courts must place arbitration on an equal footing with other contracts, and enforce them according to their terms." AT&T Mobility LLC v. Concepcion, 131 S.Ct. 1740, 1746 (2011)). "The party seeking to compel arbitration has the burden of demonstrating by a preponderance of the evidence the existence of an agreement to arbitrate." Tellium, Inc. v.

3

Corning Inc., No. 03–CV–8487, 2004 WL 307238, *5 (S.D.N.Y. 2004). The Court looks to state contract law to determine the enforceability of an arbitration agreement. Cap Gemini Ernst & Young, U.S., L.L.C. v. Nackel, 346 F.3d 360, 365 (2d Cir. 2003).[2]

Bakon argues that he never entered into the Agreement, and thus cannot be compelled to arbitrate pursuant to it. He says that he never received the Agreement in the mail, and complains that Rushmore has only submitted an "exemplar" of the Agreement that is neither signed nor dated. ECF 14, Opposition, at p. 4. First, actual receipt of an arbitration agreement need not be proven to enforce it. Under both New York and South Dakota law, "regular use of a credit card constitutes sufficient evidence of the card user's consent to the terms of the agreement governing the account," McCormick, 2016 WL 107911, at *4 (citing cases and statutes), and "[p]roof of mailing may be accomplished by presenting circumstantial evidence, including evidence of customary mailing practices used in the sender's business." Kurz v. Chase Manhattan Bank USA, N.A., 319 F.Supp.2d 457, 463 (S.D.N.Y. 2004); see also Edwards v. Macy's Inc., No. 14-CV-8616, 2015 WL 4104718, at *6 (S.D.N.Y. June 30, 2015). Rushmore offers uncontested evidence that Bakon used the credit card on December 25, 2014, and testimony that it was Premier's custom to direct its vendor to mail the Agreement with each new credit card when an account was opened, and that it directed its vendor to do so in this case. Gilson Dec. at ¶¶ 7-8. This is sufficient unrebutted evidence to entitle Rushmore to a presumption that Bakon received the Agreement and agreed to its terms.

---

[2] The Agreement stipulates that the substantive law of South Dakota should apply to any disputes between the parties. ECF 19-1, Agreement, at p. 8. There is no conflict between the relevant substantive law of New York and South Dakota, and so the Court need not conduct a choice of law analysis. McCormick v. Citibank, NA, No. 15-CV-46, 2016 WL 107911, at *4 (W.D.N.Y. Jan. 8, 2016) (collecting cases).

Second, that Rushmore submits only an "exemplar" of the Agreement is of no consequence. While the FAA mandates that arbitration agreements be in writing, it does not require that they be signed. Genesco, 815 F.2d at 846. Here, Julie K. Gilson, an employee of Premier with knowledge of its records and the Account, states that the Agreement attached to her declaration "contain[s] the terms and conditions governing the Account at the time of opening through the entire duration of the Account, which have not been changed or amended." Gilson Dec. at ¶ 7. Further, the Agreement displays a "05/14" notation at the bottom, and Gilson explains that the Agreement sent to Bakon "would have been the May 2014 version as that was the last updated version of the agreement prior to October 2014." Id. at n. 2. The Court is satisfied that the agreement Rushmore has offered is a true copy of the actual Agreement that was sent to Bakon in October 2014, to which he agreed. Compare to In re Currency Conversion Fee Antitrust Litig., 265 F. Supp. 2d 385, 428 (S.D.N.Y. 2003).

Finally, Plaintiff argues that the Gilson Declaration is impermissible hearsay because it does not satisfy the business records exception under Fed. R. Evid. § 803(6). Bakon complains that the declaration itself was not made in the ordinary course of business and that Gilson was not personally involved in creating the business records she relies upon and offers as evidence. ECF 14, Opposition, at pp. 11-14. To adopt Plaintiff's reasoning would require the Court to strike almost every affidavit of a corporate record keeper filed in any case. This is clearly absurd. Indeed, there is nothing improper about Gilson's declaration. She states that she is an employee of Premier, that the information she provides is based on her personal knowledge or the knowledge of individuals working under her direction and supervision, that she has "personal knowledge of the general practices of Premier with respect to its credit card accounts," and has "access to the business records relating to the credit card accounts," including Bakon's Account.

Gilson Dec. at ¶¶ 1-3. She also swears that the exhibits attached to her declaration, namely the Agreement and the Account statements, are "all true and correct copies of business records created and maintained by Premier or its affiliates in the course of regularly conducted business activity, and as part of the regular practice of Premier to create and maintain such records, and also were made at the time of the act, transaction, occurrence or event, or within a reasonable time thereafter." Id. at ¶ 5. Plaintiff offers no rational reason to doubt the trustworthiness of the Gilson Declaration or the records it relies upon, and the Court is satisfied that it is admissible and may be considered on this motion.

Having addressed Plaintiff's arguments, the Court must determine whether Rushmore may invoke the arbitration agreement between Bakon and Premier and compel arbitration of this case. In certain circumstances, "a non-signatory to an arbitration agreement may compel a signatory to that agreement to arbitrate a dispute. . ." JLM Indus., Inc. v. Stolt-Nielsen SA, 387 F.3d 163, 177 (2d Cir. 2004). Here, the Agreement identifies a class of parties who are covered by the Agreement in addition to the bank and cardholder, namely the "employees, parents, subsidiaries, affiliates, beneficiaries, agents and assigns of you and us." ECF 19-1 at p. 7. That Premier, a signatory to the Agreement, "authorized or retained" Rushmore to collect on Bakon's account makes Rushmore, a minimum, an "affiliate" of Premier expressly contemplated by the Agreement. Rushmore, as a member of this class, was intended as a third party beneficiary who may enforce the Agreement. See e.g. Fedotov v. Peter Roach and Assoc., P.C., No. 03-CV-8823, 2006 WL 692002 (S.D.N.Y. Mar. 16, 2006); Lucy v. Bay Area Credit Svc LLC, 792 F.Supp. 2d 320, 324 (D. Conn. 2011) ("Because the arbitration agreement delineates which non-signatories may compel arbitration, [plaintiff] cannot fairly be considered to have consented to

arbitration with any other entities."). The Court holds that Plaintiff entered into a valid and enforceable arbitration agreement with Premier, which Rushmore may invoke.

We now turn to the remaining factors to consider on a motion to compel arbitration. This dispute is squarely within the scope of the Agreement, which requires arbitration of all claims related to the Account. ECF 19-1 at p. 7. The presumption of arbitrability "is only overcome if it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." Holick, 802 F.3d at 395 (internal quotations omitted). Bakon's FDCPA claim is based on a letter seeking to recover unpaid debt on his credit card account, and therefore clearly relates to that account. Further, Plaintiff's sole cause of action claims a violation of the FDCPA, claims under which are arbitrable. Fedotov, 2006 WL 692002 at *3 (collecting cases).

Having considered the relevant factors, the Court holds that the Agreement binds the parties and compels individual arbitration of this case. See Concepcion, 131 S.Ct. at 1748. Defendant's motion is hereby granted and this case is stayed pending the outcome of arbitration. Katz v. Cellco Partnership, 794 F.3d 341, 345 (2d Cir. 2015).

SO ORDERED.

Dated: Brooklyn, New York
June 2, 2017

/s/
I. Leo Glasser